UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LILLIAN LEWIS,<br>PLAINTIFF<br><br>VS.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>DEFENDANT | CASE NO. 1:08CV055<br>(SPIEGEL, J.)<br>(HOGAN, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Supplemental Security Income in October, 2001. Her application was denied, both initially and upon reconsideration. She requested and obtained a hearing before an Administrative Law Judge (ALJ) in Cincinnati, Ohio. The ALJ reached an unfavorable decision in November, 2004. Plaintiff then processed an appeal to the Appeals Council, which denied review in September, 2005. Plaintiff then filed a Complaint seeking judicial review in this Court, which remanded the case. A second hearing before an ALJ was held in December, 2006. Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), George Rogers and Medical Expert, William Cody. The ALJ again reached an unfavorable decision and Plaintiff again sought relief from the Appeals Council, which again denied review in January, 2008. Plaintiff again filed her Complaint in January, 2008.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ made three errors prejudicial to her case. The first is that the ALJ's residual functional capacity analysis did not take into consideration Plaintiff's past attendance problems and the slow pace at which she is able to work. The second is that the ALJ did not consider that Plaintiff lacked the capacity to read at a level consistent with the Dictionary of Occupational Titles and its requirements for a "cleaner" job. The last is that the ALJ's restriction to preclude "fast-paced work" does not describe Plaintiff, whose work speed is slow.

In like manner, a restriction from "complex work" does not mean that Plaintiff has the capacity to perform more than one or two-step tasks.

## PLAINTIFF'S AND THE PSYCHOLOGISTS' TESTIMONY AT THE HEARINGS

At the first hearing in September, 2004, Plaintiff said that she had worked at a fast food restaurant, White Castle, for 4-6 weeks and that she "mostly cooked," but also ran the cash register. She reported having difficulty with the cash register and cleaning the floor "slower than what most people does there." She didn't recall whether or not she moved or got fired. She then took a job at McDonald's, where she worked for approximately a month. She reported not being able to read boxes and having trouble keeping up the pace. She could not recall the year of employment, but records indicated that it was 2003.

Plaintiff's education terminated in the 10th grade at Princeton High School, where she attended special education classes. She estimated that she could read at the first grade level and could not spell or write well. She was asked if she would like to work as a cleaning lady, because the Vocational Expert indicated that she could clean houses or offices, and she expressed no interest in that type of work, but her rationale was nonsensical. She expressed a desire to return to cooking, but expressed a concern that she would be unable to keep the pace. She then expressed an interest in becoming a pediatrician, a truly preposterous idea.

To put this later expression of interest in perspective, Plaintiff's full-scale IQ in 1998 was 78 and in 2001, her full-scale IQ was 61. Dr. Schwartz, the psychological expert, voiced the opinion that the 1998 IQ test was more accurate because her children were a distracting influence, and that she could carry our simple instructions, but had a moderate impairment of her ability to tolerate stress and a mild impairment of her ability to remember. Dr. Schwartz felt that Plaintiff's performance abilities were greater than her verbal abilities. She spoke in such a way that it was difficult to understand her. We will later learn that she is missing a number of upper teeth. (Tr. 186-215).

Following remand of her case, a second hearing took place in December, 2006. It was brought out then that Plaintiff had worked for a 3-month period at Taco Bell loading and

2

unloading the dishwasher. Plaintiff said that she was unsuccessful at working the cash register and at the drive-through window because she couldn't read and because the pace was too fast.

Plaintiff testified that she has 4 children and lives with her parents. She is able to drive to the grocery store, do dishes and sweep the floor.

Dr. Rogers, a psychologist, testified that the IQ testing in 1998 was more accurate because Plaintiff had her children with her in 2001 and their presence interfered with the test results. Dr. Rogers testified that Plaintiff has borderline intellectual functioning and "significant learning disabilities." Her "primary issues would be in the reading and spelling areas." Dr. Rogers expressed the opinion that working at a drive-through window would be too stressful for Plaintiff because the job would be too fast-paced and too complex for her. He testified that Plaintiff could handle the job of packer if it were slow paced and she could stay focused. His opinion was that if the packing job also included picking or selecting which product to pack, Plaintiff would have more difficulty. Dr. Rogers opined that Plaintiff had a moderate restriction of her ability to perform the activities of daily living, a mild restriction of her ability to maintain social function and a mild restriction of her ability to concentrate. He evaluated her ability to persist as "average." He opined that Plaintiff could handle one or two-step instructions.

Upon questioning by Plaintiff's counsel, Dr. Rogers stated that Plaintiff had experienced attendance problems, both on the job and during her schooling, but her attendance problems were more a function of attitude than limited intellectual function, especially since Plaintiff had a support system in place.

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

William Cody, the VE, was asked to assume the accuracy of the restriction imposed by Dr. Rogers in Exhibit 12E, which are as follows:

(1) An inability to understand, remember and carry out complex instructions;

(2) The ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance is impaired, but not

3

precluded;

(3) The ability to sustain an ordinary routine without special supervision is impaired, but not precluded;

(4) She has difficulty making work-related decisions, setting realistic goals, making independent plans and using judgment on the job as distinct from a job which is routine and repetitive, so do not give her a job that requires such independent judgment;

(5) Due to difficulties responding appropriately to changes in the work setting, give her a job which does not change frequently;

(6) The job itself must be inherently not highly stressful;

(7) She has an IQ of 78 and a less than average memory. For this reason, do not give her complex or abstract work;

(8) She has a 3.5 grade reading level, a 4.6 grade arithmetic (level), so avoid jobs needing higher levels of these skills;

(9) Her speech is hand to understand; and

(10) She cannot work at a fast-paced job.

The VE responded that Plaintiff could perform the job of cleaner at the light and unskilled level. The identified job exists in representative numbers in the national economy. The VE also testified that most employers would permit 1-2 absences per month for medical reasons. (Tr. 264-290).

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff has borderline intellectual functioning and a speech articulation disorder and that these two impairments are severe. The ALJ found that Plaintiff has no exertional limitations, but has the 10 non-exertional limitations as described by Dr. Rogers in Exhibit 12E. The ALJ found that Plaintiff could perform the job of cleaner at the light and unskilled level.

4

## THE MEDICAL RECORD

The first item of interest in Plaintiff's file is a letter, handwritten by a friend, Lovey Scott, explaining that Plaintiff was late for her May, 20, 2004 hearing because she had moved and the notice was sent to her old address. The letter was written by Ms. Scott because Plaintiff allegedly could not write. (Tr. 70). Plaintiff's application for Supplemental Security Income was written by her mother, Elizabeth Kidd, for the same reason (Tr. 80-83). The Disability Report, again authored by Elizabeth Kidd, says that Plaintiff "cannot read, write, count or keep a job." The application requests vocational rehabilitation services in order to get back to work. (Tr. 95-105). Mrs. Kidd also completed a questionnaire for the Rehabilitative Services Commission in which she states that her daughter can prepare meals and clean if accompanied by another who can read directions, that Plaintiff can follow directions if they are "descriptive," and that her attention deficits and illiteracy prevent her from working as fast as others. (Tr. 109-111). The evaluation form prepared by the Rehabilitative Services Commission, states that the Back-To-Work Program recommended Plaintiff apply for Social Security benefits because she scored so low as to be untrainable. It was reported that Plaintiff "doesn't understand instructions, responds slowly and has very poor follow through." It was also reported that she "cannot, read, write, count or make change." (Tr. 114-115).

Marilyn Cleary, a social worker with Hamilton County Jobs and Family Services, reports that she is "very concerned that Ms. Lewis is not on benefits" and that she "clearly cannot work." Ms. Cleary says that Plaintiff cannot read and can only write her name and her children's first names. She goes one to say "It is hard for me as a social worker to figure how much is MR and how much is LD. I think LD may take over." Marilyn Cleary reports that "It is very hard to keep her on task" and "her speed of response is very slow." (Tr. 134-135).

Records from Princeton high School, specifically Plaintiff's IEP (Individualized Education Program) indicate that her deficiencies are reading, spelling, attendance, and staying on task. Her full-scale IQ was 78 in April, 1998. Her performance abilities were stronger than her verbal abilities. Her adaptive skills were "below that expected for one functioning in the borderline range of intelligence." (Tr. 138-155).

5

Plaintiff was evaluated by David Chiappone, Ph.D. in December, 2001. Dr. Chiappone reported that Plaintiff received Ritalin for ADHD when she was in school and that she left school in the 10th grade because she was pregnant. She had a record of employment in the fast food industry, but was fired from jobs because she could not read, count or keep pace and because she missed work. IQ testing revealed a full-scale IQ of 61, putting her in the mildly mentally retarded range (less than the 1st percentile of the general population). Her adaptive functioning "suggested higher intellectual ability than obtained through IQ testing." Dr. Chiappone concluded that Plaintiff could understand and carry out one and two-step instructions. He rated her impairments in memory, concentration/attention and ability to relate to co-workers, supervisors and the public to be mild. Her ability to tolerate stress was moderately limited. She did not appear capable of managing funds. Dr. Chiappone diagnosed Plaintiff with a learning disorder and borderline intellectual functioning. (Tr. 156-159).

Lastly, there is the psychological evaluation performed by Douglas Pawlarczyk, Ph.D., in February, 2002. Dr. Pawlarczyk diagnosed Plaintiff with borderline intelligence. Dr. Pawlarczyk rated Plaintiff's limitation on the ability to perform daily activities and maintain social function as mild, but her limitation the ability to concentrate and persist as moderate. The only functions rated as markedly limited was Plaintiff's ability to understand, remember and carry out detailed instructions. Dr. Pawlarczyk agreed with Dr. Chiappone that Plaintiff would be able to carry out short and simple instructions. He also agreed that Plaintiff could relate adequately to co-workers, supervisors and the public. Dr. Pawlarczyk opined that Plaintiff's pace would be "somewhat slow" and that she could "have some difficulty adjusting to changes in routine," but could tolerate ordinary work-related stress. Carl Tishler, Ph.D., agreed. (Tr. 160-177).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461

7

U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321 (6th Cir. 1978); *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *see Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th

8

Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to

9

constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the

following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a(c).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g);

11

*Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Errors faults the ALJ for failing to take into consideration Plaintiff's attendance problems and her slow work pace. The ALJ's hypothetical restricted Plaintiff from performing complex functions. The ALJ did not specify in his hypothetical that Plaintiff had that ability to understand, remember and carry out simple one and two-step instructions, but it was understood that three-step instructions would be classified as complex and beyond Plaintiff's ability. We do not agree that there was any error and find that the ALJ's description of Plaintiff in regard to her ability to grasp simple vs. complex instructions was well supported by the opinions of Drs. Chiappone and Pawlarczyk/Tishler.

The pace issue is more difficult. The ALJ's attempt to accommodate Plaintiff's

12

difficulty keeping pace resulted in an assumption in the ALJ's question to the VE that Plaintiff cannot work at a fast-paced job. The question assumed that Plaintiff can work at a moderate or normal speed. However, there is much evidence that Plaintiff cannot work at a normal speed. Plaintiff testified that she was fired from her jobs at White Castle, McDonald's and Taco Bell because she could not keep the pace. Both her mother, Mrs. Kidd, and Marilyn Cleary, the social worker from Hamilton County Jobs and Family Services said that Plaintiff works at a slower than normal pace, a conclusion supported by Dr. Pawlarczyk. Why Plaintiff is able to work only at a slower than normal speed in subject to interpretation, but we do know that Plaintiff is "grossly overweight," as described by Dr. Chiappone, has borderline intelligence and has a learning disability. The fact is that merely restricting Plaintiff from a fast-paced job does not adequately describe a person like Plaintiff, who has the capacity to work only at a slower-than-normal speed. The VE identified the job of cleaner as one that Plaintiff had the residual functional capacity to perform. The VE did not specifically indicate which of the many categories of "cleaner" the Dictionary of Occupational Titles lists. We understand that what the VE had in mind was cleaning houses or commercial establishments, such as homes and offices. We therefore assume the VE was talking about the job of cleaner as described at 323.687-014, Dictionary of Occupational Titles, and a job which can be performed with some, but not a lot of supervision.

The job requires an ability to read at the rate of 95-120 words per minute and an ability to print simple sentences containing a subject, verb and object. There is nothing in the job description which indicates that it can be performed at a slower-than-normal pace, although one can infer that if a person operates at a somewhat faster than normal pace, he or she can take more breaks or rest periods than one working at normal speed. It is doubtful that Plaintiff can read at the required rate or work at the required pace. It is also doubtful that Plaintiff can print simple sentences because her mother filled out the Social Security forms due to Plaintiff's inability to do so. This portion of Plaintiff's first Statement of Errors merits a reversal and remand for the ALJ's modification of the hypothetical question and the VE's response, as well as psychological testing to determine Plaintiff's reading rate and her ability to construct simple sentences.

The Plaintiff makes two other points as part of her first statement of Errors. We regard neither conclusion by the ALJ as erroneous. The first is Plaintiff's past problem with attendance. The ALJ ignored this pattern of behavior, as did Dr. Rogers, who explained that it was more reflective of attitude than a physical or mental impairment, especially in light of Plaintiff's support system. We agree. The second is Plaintiff's insistence that the job of cleaner requires more than one or two-step instructions. We disagree here also. Simply because the job may require multiple tasks does not indicate that these tasks are sequential.

The second Statement of Error was answered by our response to the first. The record is silent on the subject of Plaintiff's rate of reading. While some conclusions might be drawn about Plaintiff's ability to comprehend what she is able to read from her testimony and prior failures at the fast-food restaurants, we do not know her reading rate, although the record does show that she read at the 1st grade level in December, 2001 as determined by Dr. Chiappone and at the 3.5 grade level in July, 2001 as determined by the Tests of Adult Basic Education. These tests produce grade-level equivalents, not reading rates. A remand is in order to either make the conversion, if that can be done, or to determine the rate at which Plaintiff reads.

The third Statement of Errors is critical of the ALJ for his conclusion that the job of cleaner involved simple instructions and that a person who can only work at slower than normal speed can perform the job. We have previously resolved these objections and will not repeat our responses. As part of this Statement of Error, Plaintiff complains that the VE described the job of cleaner at the first hearing in September, 2004 as being less than full-time, and another VE described the same job as full time during the hearing in December, 2006. Tracey Young, the VE at the first hearing, stated that the job of cleaner requires 20-30 hours per week, but is considered full-time in the industry. (Tr. 210). William Cody, the VE at the second hearing, stated that the job of cleaner was full-time as determined by the Employment Quarterly, various publications from the U.S. department of Labor and Census Bureau. (Tr. 287). As Defendant argues, the conflict between the two vocational experts was resolved in favor of Mr. Cody, who provided his sources, although not specifically. Substantial evidence exists that the job of cleaner is a full-time, 40 hours per week job.

## CONCLUSION

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits. *Faucher,* 17 F.3d at 176. This matter should be remanded for further proceedings, including a determination of Plaintiff's reading rate and her ability to construct simple sentences. In light of the fact that the VE determined only one job that Plaintiff could perform, namely the job of cleaner, the following directive should apply. If Plaintiff is unable to read at the required rate or cannot construct simple sentences, she should be declared disabled and entitled to benefits. If Plaintiff can perform both the above requirements of the cleaner job, the ALJ should modify his residual functional capacity assessment to indicate that Plaintiff is able to work at a less than normal speed; and further vocational considerations consistent with this decision.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner by **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

January 23, 2009

Timothy S. Hogan
United States Magistrate Judge

15

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).